CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

October 24, 2024

LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | |
|---|---|
| PEDRO OCHOA, ROGELIO MATA VAZQUEZ, and WILMER BENJAMIN ICAL LOPEZ, individually on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>ALL PRO PLUMBING AND HVAC LLC,<br><br>GM PLUMBING SERVICES INC.,<br><br>COMFORT SYSTEMS USA, INC., AND<br><br>COMFORT SYSTEMS USA (MIDATLANTIC), LLC,<br><br>                    Defendants. | Civil Action No. __1:24cv47__ |

## COMPLAINT

1.     This is a collective and class action suit for unpaid overtime and misclassification under federal and state law. Plaintiffs, Pedro Ochoa ("Ochoa"), Rogelio Mata Vazquez ("Vazquez"), and Wilmer Benjamin Ical Lopez ("Ical") each individually, on behalf of themselves, and on behalf of all others similarly situated (collectively "Plaintiffs" or "Class Representatives"), respectfully move for judgment against Defendants All Pro Plumbing and HVAC LLC ("All Pro"), GM Plumbing Services, Inc. ("GM"), Comfort Systems USA, Inc. and Comfort Systems USA (MidAtlantic), LLC (the Comfort Systems entities are collectively referred to as "Comfort Systems") (all defendants are collectively referred to as "Defendants") for failing to pay their employees in accordance with the Fair Labor Standards Act ("FLSA"), Virginia Overtime Wage Act ("VOWA"), and misclassifying their employees as independent

1

contractors in violation of Virginia's employee misclassification law.

2.    Wage theft has been a pervasive issue in the Commonwealth of Virginia, so much so that in 2021, the General Assembly adopted statutes designed to compensate victims and incentivize employers' compliance with the law. Worker misclassification is another form of wage theft and payroll abuse where workers that should be classified as employees are illegally classified as independent contractors. By misclassifying workers, employers are denying their employees from receiving lawful wages and benefits while simultaneously underfunding social insurance programs like Social Security, Medicaid, unemployment insurance, and workers' compensation.

3.    According to a Joint Legislative Audit and Review Commission (JLARC) report on worker misclassification, "how an employer can reduce payroll costs by an estimated 26 percent by classifying a construction worker … as an independent contractor rather than an employee." JLARC, *Review of Employee Misclassification in Virginia*, 14 (June 2012). The report further identifies that by "misclassifying, employers gain a substantial unfair competitive advantage over employers who comply with tax and labor laws" and in turn this problem has become endemic in the trade to reduce employers' payroll and increase profits. *Id.* at 15.

4.    A common form of misclassification and wage theft in the construction industry is by construction companies who hire workers through labor brokers (hereinafter "Labor Brokers"). Generally, Labor Brokers are to the construction industry what "temp agencies" are to white collar businesses, where such brokers recruit and supply workers for a company which in turn supervises and directs the work of such laborers. Construction companies and their Labor Brokers fail to follow federal and state wage/hour and misclassification laws. Labor Brokers often pay their laborers in cash or check, without any federal or state tax withholdings, and

typically pay only "straight time" for overtime. Defendants here have engaged in such conduct, the effect of which is to deny laborers on their construction sites their lawfully owed wages and benefits in violation of federal and Virginia wage and misclassification laws.

5.    Wage theft and employee misclassification appear to be widespread in the construction industry as evidenced by numerous lawsuits brought within 4th Circuit by Spanish-speaking laborers alleging that contractors and sub-contractors are supervising the laborers on construction sites where such laborers receive only "straight time" for overtime in violation of federal and state law. *Torres et al. v. Manganaro Midatlantic, LLC et al.*, 3:24-cv-00343-RCY (2024); *Graves v. JP Construction Group Inc., et al.*, 3:24-cv-00574-RCY (E.D. Va. 2024); *Torres et al. v. Five Star Home Repair LLC, et. al.* No. 3:323-cv-575 (DJN) (E.D Va. 2023); *Rosales et al. v. Rock Spring Contr. LLC*, 2024 U.S. Dist. LEXIS 60970, (E.D. Va. April 2, 2024); *Cruz Ramos et al. v. Precision Walls et al. No. 3:23cv526* (MHL) (E.D Va. 2023); *Jiminez Vega et al. v. Fox Building Group Inc.* No. 3:23cv852 (RCY) (E.D Va. 2023). *See also Salinas v. Commercial Interiors, Inc*., 848 F.3d 125, 129 (4th Cir. Jan 25. 2017).

6.    This complaint seeks relief for claims of unpaid overtime in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA") arising out of work that Plaintiffs individually, and others similarly situated performed for the benefit and at the direction of the Defendants.

7.    Plaintiffs bring their FLSA claim as a collective action on behalf of themselves and those similarly situated ("Putative Collective Members") against Defendants. Class Representatives ask that if this case is not certified as a collective action that they be permitted to proceed individually with their claims.

8.    Plaintiffs bring their VOWA claims as a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of themselves and those similarly situated ("Putative Class Members") against Defendants.

9.      Plaintiffs and the Putative Class Members also seek to recover damages associated with their misclassification pursuant to Va. Code § 40.1-28.7:7, and also bring this claim as a class action under Rule 23 of the Federal Rules of Civil Procedure.

10.     Plaintiffs ask that if this case is not certified as a class action for their state law claims, that they be permitted to proceed individually with their claims.

## Jurisdiction and Venue

11.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 in that the Plaintiffs raise a question of federal law.

12.     This Court has supplemental jurisdiction of all Virginia state claims pursuant to 28 U.S. Code § 1367 in that the Virginia claims are so related to the Federal claim and such claims form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 2(b) because the actions that give rise to the Complaint occurred in the Western District.

14.     Defendants are subject to personal jurisdiction in the Commonwealth of Virginia.

## Parties

15.     GM Plumbing Services Inc. is located in Philadelphia, Pennsylvania and performed work in Virginia.

16.     All Pro Plumbing and HVAC is located in Manassas, Virginia. The registered agent is Ricardo Alfonso Navarro Quevedo.

17.     Comfort Systems USA (MidAtlantic), LLC is a subsidiary or other related entity

of Comfort Systems USA. It has a registered office in Richmond, Virginia and performs work across Virginia.

18.     Comfort systems USA, Inc., is the parent company or owner of Comfort Systems USA (MidAtlantic), LLC, and is based out of Houston, Texas. On information and belief, the Comfort System entities share administrative, managerial, payroll, and human resources functions such that they are integrated entities or joint employers as it relates to the matters alleged herein.

19.     The Rule 23 Class Representatives are Pedro Ochoa, Rogelio Mata Vazquez and Wilmer Benjamin Ical Lopez.

20.     All named Plaintiffs reside in Virginia. The Plaintiffs' consents to opt-in to this action are attached as **Exhibit 1**.

<u>**Factual Allegations**</u>

21.     Plaintiffs were hired in Virginia to work on the Hard Rock Casino in Bristol, Virginia.

22.     Plaintiffs Vazquez and Ical and other similarly situated laborers were individually hired to work as laborers for Comfort Systems through the Labor Broker All Pro.

23.      Ochoa and other similarly situated laborers were individually hired to work as laborers for Comfort Systems through the Labor Broker GM.

24.     All Pro and GM are collectively referred to as the "Labor Broker Defendants."

25.     Comfort Systems contracted with the Labor Broker Defendants to provide laborers to perform work associated with the plumbing and HVAC installation for which Comfort Systems was paid by the general contractor.

26.     Plaintiffs each were laborers who performed manual labor for the benefit of

Comfort Systems and either/both of the Labor Broker Defendants. Others similarly situated to Plaintiffs were laborers who performed the same or similar work for the benefit of the same parties.

27.    Plaintiffs and similarly situated laborers received job instructions and supervision from at Comfort Systems' construction foremen and supervisors namely Henry Street, Michael Williams, Wayne and Rick.

28.    An individual from All Pro translated the Comfort Systems Forman's instructions from English into Spanish.

29.    The Plaintiffs and similarly situated laborers did not receive any instructions or supervision from the Labor Broker Defendants.

30.    No Plaintiff or similarly situated laborer performed any work for Comfort Systems without Comfort Systems providing a construction foreman on the jobsite to provide management and supervision of Plaintiffs' work and the work of similarly situated laborers.

31.    Neither Plaintiffs nor the Putative Class/Collective Members were permitted to perform any work for Comfort Systems without Comfort Systems providing safety personnel on the jobsite.

32.    Said safety personnel would supervise and ensure all safety requirements were being met to Comfort Systems' satisfaction.

33.    Plaintiffs were all given safety vests by Comfort Systems.

34.    Each morning before 7:00 a.m., Plaintiffs would report to Comfort Systems' foreman, Henry Street, who would provide that day's sign-in sheet.

35.    The Plaintiffs would then receive directions from Michael Williams and Rick (last name unknown), both of whom were Comfort Systems' employees who also supervised the

Plaintiffs.

36.    The Comfort System supervisors instructed the Plaintiffs where to run and install drainage and water pipes and how to connect the pipes between floors.

37.    On all Comfort Systems jobsites where Plaintiffs worked, Comfort Systems exercised the following control over Plaintiffs and those similarly situated:

   a.  the authority to hire and fire;

   b.  determined the nature, location, work hours and extent of the construction work that Plaintiffs and those similarly situated were to perform each day;

   c.  its foremen managed and supervised the work of Plaintiffs and other similarly situated laborers;

   d.  its safety personnel oversaw the Plaintiffs and other similarly situated laborers

   e.  as a subcontractor, Comfort Systems had substantial control over the premises at which Plaintiffs and similarly situated laborers worked;

   f.  Plaintiffs and the other similarly situated laborers were required to record their time on Comfort System's timesheets and submit to Comfort Systems for each day that they worked on the Hard Rock Casino site, so that Comfort Systems knew how many hours the laborers worked.

38.    Plaintiffs and other similarly situated laborers showed up to work with only modest hand tools, as is common in the plumbing industry.

39.    Comfort Systems provided all heavy tools necessary for Plaintiffs and other similarly situated laborers to do the construction work required, including scissor lifts, welding torch and welding supplies, HVAC pipe, and other construction materials necessary for Plaintiffs

and for other laborers to do the construction work required.

40.     Plaintiffs received their paycheck from the Labor Broker Defendants, either from All Pro or GM.

41.     Mr. Vazquez was paid a regular rate of $28.00 per hour.

42.      Mr. Ical was paid at a regular rate of $24.00 per hour.

43.     Mr. Ochoa was paid a regular rate of $16.25, which was increased to $17.00 per hour.

44.     Plaintiffs received their straight time rates for all hours worked, regardless of the number of hours worked.

45.     The Plaintiffs' paychecks did not have any deductions taken out.

46.     Plaintiffs observed similarly situated laborers working similar hours through their employment with Defendants, totaling more than forty (40) hours per week at the Hard Rock Casino site.

47.     Despite working more than forty (40) hours per week, Plaintiffs and other similarly situated laborers did not get paid overtime at a time and a half rate for hours worked over forty (40).

48.     Throughout their employment Plaintiffs and other similarly situated laborers generally worked approximately eighteen (18) hours of overtime each week.

49.     The Plaintiffs and those similarly situated generally worked ten (10) hours each day Monday through Friday and eight (8) hours on Saturdays.

50.     For example, for the week ending May 24, 2024, Wilmer Ical received a paycheck from All Pro for One Thousand Three Hundred Ninety Two ($1,3920.00) for fifty-eight (58) hours of work. Wilmer Ical's regular rate of pay was $24.00 per hour. See **Exhibit 2**.

51.     Ical's overtime rate would have been $36.00 per hour. If he had received overtime premiums on all hours worked in excess of forty (40), he would have received a total of One Thousand Six Hundred and Eight Dollars ($1,608.00) for forty (40) hours of work at his rate of $24.00 per hour and eighteen (18) hours of work at his overtime rate of $36.00 per hour. Defendants thus failed to pay Ical Two-Hundred and Sixteen Dollars ($216.00) in overtime compensation for that week.

52.     For the week ending in April 19, 2024, Pedro Ochoa received a paycheck from GM for Nine Hundred and Eighty-Five Dollars ($985.00) for fifty-eight (58) hours of work. Pedro Ochoa's regular rate of pay was $17.00 per hour. See **Exhibit 3**.

53.     Pedro Ochoa's overtime rate would have been $25.50 per hour. If he had received overtime premiums on all hours worked in excess of forty (40), he would have received a total of One Thousand One Hundred and Thirty-Nine Dollars ($1,139.00) for forty (40) hours of work at his rate of $17.00 per hour and eighteen (18) hours of work at his overtime rate of $25.50 per hour. Defendants thus failed to pay Pedro Ochoa One-Hundred and Fifty-four Dollars ($154.00) in overtime compensation for that week.

54.     Upon information and belief, Comfort Systems hired Plaintiffs, and hires similarly situated laborers, through Labor Brokers, with the intent to lower labor costs by denying such laborers basic rights including overtime wages guaranteed by the FLSA.

55.     Comfort Systems, All Pro and GM knew Plaintiffs and similarly situated laborers worked overtime hours without getting paid an overtime premium.

56.     It has been the general practice within the construction industry for years that Labor Brokers do not pay overtime premiums to drywall and other non-licensed (non-tradesman) manual laborers, and large subcontractors like Comfort Systems use Labor Brokers to skirt wage

and hour laws, while maintaining and exercising control over the workers on their construction sites as if they were their own employees.

57.     Plaintiffs were not employed in any bona fide executive, administrative, or professional capacity. Their fellow laborers were not employed in any bona fide executive, administrative, or professional capacity.

58.     Plaintiffs and their fellow laborers performed blue collar, manual work.

59.     Based on the nature of the job duties of Plaintiffs and the job duties of their fellow laborers, there is no FLSA exemption that applies to preclude them from being paid overtime at one and one-half times their regular rate of pay for all hours worked in excess of forty (40) per week.

60.     Comfort Systems, All Pro and GM willfully violated the FLSA by knowingly failing to pay overtime.

61.     At all relevant times Comfort Systems, All Pro and GM intended to deprive Plaintiffs and similarly situated laborers of the minimum wages and/or overtime pay to which they were entitled or acted with reckless disregard for the rights of Plaintiffs and similarly situated laborers.

62.     Comfort Systems, All Pro and GM's violation of the FLSA rights of laborers is believed to be continuing and ongoing.

63.     The economic reality of the relationship between the Defendants and the Plaintiffs, and the Putative Class/Collective Members, is that of an employment relationship. Plaintiffs, and those similarly situated, are, and have been, misclassified as Independent Contractors by Defendants. For example:

        a.   Defendants closely monitor and direct the day-to-day operation of Plaintiffs and

10

the Putative Class/Collective Members. Plaintiffs and the Putative Class/Collective Members have no discretion over their duties, responsibilities and daily tasks.

b.   Defendants retain the right to assign laborers to specific jobs and specific aspects of those jobs.

c.   Defendants determine the rates charged to the General Contractor(s)

d.   Defendants determine the amounts paid to Plaintiffs and the Putative Class/Collective Members.

e.   Defendants control all aspects of the availability for profit.

f.   The Labor Broker Defendants separately rented trailers and provided extremely cramped housing to the workers while they were in southwest Virginia.

g.   The Defendants controlled the workers' schedules including when they would travel to Bristol, Virginia to work on the project.

h.   Defendants oversee and control the actual conduct of the work to be performed such as requiring safety equipment, specific tools and practices of the trade.

**Allegations Regarding Comfort systems and the Labor Broker Defendants**

64.   Comfort Systems is/was the employer or an employer of all current Plaintiffs and similarly situated laborers, and all Plaintiffs and similarly situated laborers are/were employees of Comfort Systems, under the FLSA.

65.   Alternatively, the Labor Broker Defendants are/were the employers or an employer of the Plaintiffs and similarly situated laborers paid through All Pro or GM and all Plaintiffs and similarly situated laborers are employees of the Labor Broker that paid them, under the FLSA.

11

66.     Alternatively, Comfort Systems and the Labor Broker Defendants are joint employers of Plaintiffs, and all similarly situated laborers under the FLSA. As to any particular Plaintiff or similarly situated laborer, the joint employers are Comfort Systems, All Pro and GM through which that Plaintiff or similarly situated laborer has been paid for working on the Comfort System job.

67.     Labor Broker Defendants are/were an employer of Plaintiffs and similarly situated laborers because they pay or paid Plaintiffs and similarly situated laborers for the work, they perform on the Comfort System job.

68.     Comfort Systems and the Labor Broker Defendants are joint employers of Plaintiffs and similarly situated laborers because, among other reasons, Comfort Systems and the Labor Broker Defendants jointly determine, share, or allocate the power to:

    a.  direct, control, or supervise the laborers;

    b.  hire or fire the laborers; and

    c.  modify the terms or conditions of the laborers' employment.

69.     In addition, Comfort Systems and the Labor Broker Defendants All Pro and GM are joint employers of Plaintiffs and similarly situated laborers because, among other reasons, Comfort Systems and the Labor Broker Defendants jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; or providing the equipment, tools, or materials necessary to complete the work. For example, Comfort Systems provides heavy tools and equipment and all materials for laborers to complete the work and All Pro and GM administer the payments to the individual laborers for their work.

70.     All Defendants willfully violated the FLSA and VOWA by knowingly failing to pay overtime.

71.     At all relevant times Defendants intended to deprive each Plaintiffs individually and similarly situated laborers of the overtime pay to which they were entitled or acted with reckless disregard for the rights of each Plaintiff individually and similarly situated laborers.

72.     Defendants' violations of the FLSA and VOWA rights of the laborers is continuing and ongoing.

### Representative Action Allegations for FLSA Claims

73.     Plaintiffs file this statutorily authorized FLSA collective action pursuant to 29 U.S.C. § 216(b) as Representative Plaintiffs.

74.     For purposes of the collective claims, Plaintiffs bring their FLSA claims on behalf of themselves and all past and present laborers of Comfort Systems who, within the three years prior to filing were hired through the Labor Broker Defendants to provide HVAC and similar construction labor for the benefit of Comfort Systems under the supervision of Comfort System's foremen, who worked more than forty (40) hours per week and were not paid an overtime premium for hours worked over forty (40).

75.     Plaintiffs are aware of other laborers who are similarly situated.

76.     Plaintiffs estimate that there may be one hundred or more similarly situated individuals due to high turnover of laborers who were deprived of overtime pay, and who continue to be so deprived, who were hired by Comfort Systems directly or through All Pro and GM.

77.     Plaintiffs believe and thereon allege that All Pro and GM have been used by Comfort Systems within the past three years, and continuing, as part of a common plan or scheme to avoid paying overtime wages on construction projects.

78.     Upon information and belief, these laborers were paid, and continue to be paid,

under a similar pay scheme which deprived them of overtime pay.

79.    Upon information and belief, these laborers perform, and have performed, work which entitles them to payment of overtime compensation that they have not received.

80.    Upon information and belief, Comfort Systems, All Pro and GM compensated, and continue to compensate, those similarly situated to Plaintiffs on a uniform compensation basis.

81.    Comfort System's policy of using Labor Brokers to avoid paying overtime amounted to a willful or reckless disregard of its employees' rights under the FLSA.

82.    All Pro and GM's policy of not paying overtime amounted to a willful or reckless disregard of the employees' rights under the FLSA.

83.    Defendants have no good faith basis to believe that these employees were not entitled to overtime under the FLSA.

84.    Plaintiffs assert that Defendants' willful disregard of the overtime laws described herein entitles Plaintiffs individually and similarly situated employees to the application of the three (3) year limitations period.

85.    Plaintiffs' job duties, and the job duties of those similarly situated to Plaintiffs, are not exempt from the coverage of the FLSA.

86.    At all relevant times, all Plaintiffs and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

### Class Action Allegations

**A.    Class Definition**

87.    Plaintiffs, the Rule 23 Class Representatives, seek to maintain claims pursuant to Va. Code §§ 40.1-28.7:7, and 40.1-29.2, individually and on behalf of classes of current and

14

former laborers who worked through either Labor Broker for Comfort Systems on the Hard Rock

Casino and who:

>    a.    During any time since July 1, 2021, were (mis)classified as independent
>
>    contractors and were paid by Comfort Systems, All Pro and GM ; or
>
>    b.    During any time since July 1, 2021, who worked for more than forty (40) hours in
>
>    a workweek without receiving full overtime compensation.

88.    On information and belief, Plaintiffs and all others similarly situated were made

to assent to the same pay scheme, the same [mis]classification as an Independent Contractor, and

the same work requirements.

**B.    Efficiency of Class Prosecution of Common Claims**

89.    Certification of current and former laborers is the most efficient and economical

means of resolving the questions of law and fact which are common to the claims of the

Plaintiffs and the Putative Class Members. Conversely, proceeding on an individual basis will

require the filing of potentially scores of duplicative individual suits which will waste judicial

time and resources and create the risk of inconsistent or varying adjudications of common issues.

**C.    Numerosity and Impracticality of Joinder**

90.    On information and belief, the class which the Class Representatives seek to

represent is one-hundred or potentially higher due to high turnover, individuals such that joinder

is impracticable.

**D.    Common Questions of Law and Fact**

91.    Defendants' use of laborers and the propriety of their pay scheme(s) and

classification of laborers presents common issues of fact in this matter. Moreover, the challenged

pay and classification practices apply uniformly and present identical questions of law and fact

with respect to the Class Representatives and those whom they seek to represent.

**E.    Typicality of Claims and Relief Sought**

92.    The claims of the Class Representatives are typical of those of the class members as a whole in that their claims are based on the same contract and business and compensation practices. The relief sought by the Class Representatives for unpaid overtime wages and misclassification compensation is also typical of the relief which is sought on behalf of the class.

**F.    Adequacy of Representation**

93.    Plaintiffs are adequate class representatives for all classes. Their interests are co-extensive with those of the members of the proposed classes they seek to represent. Additionally, there is substantial overlap amongst the membership of the subclasses. Plaintiffs have an intimate knowledge of their duties and the Defendants' pay practices. They are committed to being representatives of the class and have retained counsel experienced in prosecuting class action employment cases to protect the interests of the class.

**G.    Rule 23(B)(3) Requirements**

94.    Common questions of law and fact predominate over any questions affecting only individual members because the basis of the claims herein is the common application of the nonpayment of full overtime wages, as well as Defendants' practice of treating their laborers as independent contractors.  Such policies and practices are applicable to all class members.

95.    A class action is superior to other available methods for adjudicating the controversy because other methods would involve the filing of numerous individual claims that are based on the same centralized scheduling and compensation facts and the same legal issues regarding same. Numerous individual cases similar to Plaintiffs' would clog the Court's docket and waste judicial time and resources. Moreover, multiple individual cases based on the same

16

legal issue(s) could lead to inconsistent or varying adjudications of the same issue(s).

96.     The Putative Class Members do not have a substantial interest in individually controlling a separate action because any such claim would be based on the same centralized contractual compensation practices and their recovery in either an individual or class action will be based on the amount of wages, overtime compensation, or other damages that each Plaintiff has been denied by Defendants.

97.     The Class Representatives and counsel are not aware of any other litigation concerning the controversy that has already begun by proposed class members within the Commonwealth of Virginia.

98.     It is desirable to concentrate the claims in this forum because the employment practices complained of with respect to the Class Representatives have a substantial link to Virginia.

99.     Class Representatives and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class action litigation in this forum.

**COUNT I**
**Violation of the FLSA: Failure to Pay Overtime Compensation**
**(Collective Action)**

100.    This count arises from Defendants violation of the FLSA by failing to pay the correct overtime to Plaintiffs and the Putative Collective Members when they worked over forty (40) hours in individual workweeks.

101.    Plaintiffs and Putative Collective Members were not exempt from the overtime provisions of the FLSA.

102.    Plaintiffs and the Putative Collective Members were directed by Defendants to

work, and did work, over forty (40) hours in one or more individual workweeks.

103.    Defendants did not pay Plaintiffs, and the Putative Collective Members overtime compensation.

104.    Defendants violated the FLSA by failing to overtime to Plaintiffs and the Putative Collective Members, at one-and-one-half times their regular rate of pay when they worked over forty (40) hours in one or more individual workweeks.

105.    Defendants' failure to pay Plaintiffs and the Putative Collective Members one-and-one-half times their regular rate for all time worked over forty (40) hours in a workweek was willful.

**COUNT II**
**Misclassification of Workers: Violation of Va. Code § 40.1-28.7:7**
**(Class Action)**

106.    Va. Code § 40.1-28.7:7 permits misclassified workers to bring an action for damages against violating employers.

107.    Plaintiffs, and others similarly situated, performed drywall finishing and associated tasks for Defendants in exchange for renumeration.

108.    Plaintiffs and others similarly situated, were misclassified as independent contractors by Defendants despite not meeting the "Internal Revenue Service guidelines" for evaluating independent contractor status.

109.    Plaintiffs and others similarly situated, are entitled to damages caused by such misclassification, including wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, and impermissible chargebacks or deductions or other compensation lost, plus reasonable attorneys' fees and costs incurred in bringing this action.

18

## COUNT III
### Failure to Pay Overtime under VOWA: Violation of Va. Code § 40.1-29.2
### (Class Action)

110.    Defendants have knowingly violated the Virginia Overtime Wage Act, Va. Code § 40.1-29.2, by failing to pay overtime to Plaintiffs and the Putative Class Members when they worked over forty (40) hours in individual workweeks.

111.    Plaintiffs, and all others similarly situated, were not exempt from the overtime provisions of Va. Code § 40.1-29.2.

112.    Plaintiffs and the Putative Class Members are and were directed by Defendants to work, and did work, over forty (40) hours in one or more individual workweeks.

113.    Defendants violated Va. Code § 40.1-29.2 by failing to pay overtime to Plaintiffs and others similarly situated, at one-and-one-half times their regular rate of pay when they worked over forty (40) hours in one or more individual workweeks.

114.    Defendants' failure to pay Plaintiffs and the Putative Class Members one-and-one-half times their regular rate for all time worked over forty (40) hours in a workweek was willful and knowing.

115.    Plaintiffs bring this action on behalf of the class for all violations alleged herein commencing July 1, 2021, and ongoing.

116.    Pursuant to Va. Code §§ 40.1-29(J), Plaintiffs and others similarly situated are entitled to recover payment of their unpaid overtime wages, an equal amount of liquidated damages, prejudgment interest, and attorney's fees, and for any "knowing" violations between July 1, 2021 and June 20, 2022, triple damages.

## Relief Requested

Wherefore, Plaintiffs request the following Relief against Defendants, individually,

collectively, jointly, and severally:

      a.      An order conditionally certifying Putative Collective Action Members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

      b.      Certification of the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

      c.      Judgment against all Defendants for violations of the overtime provisions of the FLSA and VOWA;

      d.      All unpaid wages and overtime damages due to Plaintiffs and Members of the FLSA Collective and the state law class action claims;

      e.      All unpaid wages, salary, or benefits due to the Class as a result of Defendants' misclassification scheme pursuant to Va. Code § 40.1-28.7:7;

      f.      Judgment that Defendant's violations of the FLSA were willful;

      g.      Judgment that Defendant's violations of VOWA was knowing;

      h.      Liquidated damages equal to the unpaid overtime and/or unpaid wage compensation due under FLSA and VOWA;

      i.      All other damages available under Va. Code § 40.1-29(J) including triple damages for all claims where such relief is available;

      j.      Pre-judgment and post-judgment interest;

      k.      Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

      l.      Leave to amend to bring additional claims and/or parties, including but not limited to allowing all named and opt-in Plaintiffs to proceed with their individual claims should

this case not proceed as a collective or class action for any reason; and

   m.  Any and all further relief permissible by law.

**<u>Demand for Jury Trial</u>**

   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a TRIAL BY

JURY for all claims and issues so triable.

           Respectfully submitted,
           PEDRO OCHOA, ROGELIO MATA VAZQUEZ,
           AND WILMER BENJAMIN ICAL LOPEZ on
           behalf of themselves and others similarly situated


           By:_ _/s/*Craig Juraj Curwood*_____
           Craig Juraj Curwood (VSB No. 43975)
           Zev H. Antell (VSB No. 74634)
           Samantha R. Galina (VSB No. 96981)
           Butler Curwood, PLC
           140 Virginia Street, Suite 302
           Richmond, VA 23219
           Telephone: (804) 648-4848
           Fax: (804) 237-0413
           Email: craig@butlercurwood.com
              zev@butlercurwood.com
              samantha@butlercurwood.com


           *Attorneys for Plaintiffs*

21
